UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | 20 Cr. 330 (AJN) |
| GHISLAINE MAXWELL, | : | |
| Defendant. | : | |

---------------------------------------------------------------x

**THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York
Attorney for the United States of America

Alison Moe
Alex Rossmiller
Maurene Comey
Assistant United States Attorneys
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA :

-v.- : 20 Cr. 330 (AJN)

GHISLAINE MAXWELL, :

Defendant. :

-------------------------------------------------------------x

**THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

For the reasons set forth herein, the Government respectfully submits that Ghislaine Maxwell, the defendant, poses an extreme risk of flight; that she will not be able to rebut the statutory presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required, 18 U.S.C. § 3142(e)(3)(E); and that the Court should therefore order her detained.

The charges in this case are unquestionably serious: the Indictment alleges that Ghislaine Maxwell, in partnership with Jeffrey Epstein, a serial sexual predator, exploited and abused young girls for years. As a result of her disturbing and callous conduct, Maxwell now faces the very real prospect of serving many years in prison. The strength of the Government's evidence and the substantial prison term the defendant would face upon conviction all create a strong incentive for the defendant to flee. That risk is only amplified by the defendant's extensive international ties, her citizenship in two foreign countries, her wealth, and her lack of meaningful ties to the United States. In short, Maxwell has three passports, large sums of money, extensive international connections, and absolutely no reason to stay in the United States and face the possibility of a lengthy prison sentence.

BACKGROUND

On June 29, 2020, a federal grand jury in the Southern District of New York returned a sealed indictment (the "Indictment") charging the defendant with one count of conspiracy to entice minors to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 371; one count of enticing a minor to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 2422 and 2; one count of conspiracy to transport minors to participate in illegal sex acts, in violation of 18 U.S.C. § 371; one count of transporting minors to participate in illegal sex acts, in violation of 18 U.S.C. § 2423 and 2; and two counts of perjury, in violation of 18 U.S.C. § 1623.

The charges arise from a scheme to sexually abuse underage girls at Epstein's properties in New York, Florida, and New Mexico, between approximately 1994 and 1997. During that time, Maxwell had a personal and professional relationship with Epstein and was one of his closest associates.

Beginning in at least 1994, the defendant enticed and groomed multiple minor girls to engage in sex acts with Epstein, through a variety of means and methods. In particular, she played a key role in Epstein's abuse of minors by helping Epstein to identify, groom, and ultimately abuse underage girls. As a part of their scheme, the defendant and Epstein enticed and caused minor victims to travel to Epstein's residences in different states, which the defendant knew and intended would result in their grooming for and subjection to sexual abuse.

As the Indictment details, the defendant enticed and groomed minor girls to be abused in multiple ways. For example, she attempted to befriend certain victims by asking them about their lives, taking them to the movies or on shopping trips, and encouraging their interactions with Epstein. She put victims at ease by providing the assurance and comfort of an adult woman who seemingly approved of Epstein's behavior. Additionally, to make victims feel indebted to Epstein,

the defendant would encourage victims to accept Epstein's offers of financial assistance, including offers to pay for travel or educational expenses. The victims were as young as 14 years old when they were groomed and abused by Maxwell and Epstein, both of whom knew that their victims were minors.

The Indictment further alleges that the defendant lied under oath to conceal her crimes. In 2016, the defendant gave deposition testimony in connection with a civil lawsuit in the Southern District of New York. During the deposition, the defendant was asked questions about her role in facilitating the abuse of minors. The defendant repeatedly lied under oath when questioned about her conduct with minor girls.

## ARGUMENT

### I. Applicable Law

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence. *See*, *e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). A finding of dangerousness must be supported by clear and convincing evidence. *See*, *e.g.*, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *Patriarca*, 948 F.2d at 792; *Chimurenga*, 760 F.2d at 405.

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant, including the person's "character . . . [and] financial resources"; and (4) the seriousness of the danger posed by the defendant's release. *See*

18 U.S.C. § 3142(g). Evidentiary rules do not apply at detention hearings, and the Government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *see also United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000) (Government entitled to proceed by proffer in detention hearings).

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). Additionally, where, as here, a defendant is charged with committing an offense involving a minor victim under 18 U.S.C. §§ 2422 or 2423, it shall be presumed, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E).

## II. Discussion

For the reasons set forth below, the defendant presents an extreme risk of flight, and therefore she cannot overcome the statutory presumption in favor of detention in this case. Every one of the relevant factors to be considered as to flight risk – the nature and circumstances of the offense, the strength of the evidence, and the history and characteristics of the defendant – counsel strongly in favor of detention.

### A. The Nature and Circumstances of the Offense and the Strength of the Evidence

The "nature and circumstances" of this offense favor detention. As the Indictment alleges, the defendant committed serious crimes involving the sexual exploitation of minors. *See* 18 U.S.C. § 3142(g)(1) (specifically enumerating "whether the offense. . . involves a minor victim" as a factor in bail applications). Indeed, the crimes of enticing and transporting minors for illegal sex

acts are so serious that both crimes carry a statutory presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142 (e)(3)(E). The defendant repeatedly engaged in this conduct, targeting girls as young as 14 years old, for a period of years, and involving multiple minors.

These offenses carry significant penalties, and the defendant faces up to 35 years' imprisonment if convicted. The possibility of a substantial sentence is a significant factor in assessing the risk of flight. *See United States v. Moscaritolo*, No. 10 Cr. 4 (JL), 2010 WL 309679, at *2 (D.N.H. Jan. 26, 2010) ("[T]he steeper the potential sentence, the more probable the flight risk is, especially considering the strong case of the government . . . .") (quoting *United States v. Alindato–Perez*, 627 F. Supp. 2d 58, 66 (D.P.R. 2009)). Here, the defendant is facing a statutory maximum of decades in prison. This fact alone would provide a compelling incentive for anyone to flee from prosecution, but the incentive to flee is especially strong for this defendant, who, at age 58, faces the very real prospect of spending a substantial portion of the rest of her life in prison.

The strength of the evidence in this case underscores the risk that the defendant will become a fugitive. As the facts set forth in the Indictment make plain, the evidence in this case is strong. Multiple victims have provided detailed, credible, and corroborated information against the defendant. The victims are backed up contemporaneous documents, records, witness testimony, and other evidence. For example, flight records, diary entries, business records, and other evidence corroborate the victims' account of events. This will be compelling evidence of guilt at any trial in this case, which weighs heavily in favor of detention.

The passage of time between the defendant's conduct and these charges does not counsel otherwise. As an initial matter, all of the conduct is timely charged, pursuant to 18 U.S.C. § 3283, which was amended in 2003 to extend the limitations period for conduct that was timely as of the

date of the amendment,[1] to permit a prosecution at any point during the lifetime of the minor victim. *See United States v. Chief*, 438 F.3d 920, 922-25 (9th Cir. 2006) (finding that because Congress extended the statute of limitations for sex offenses involving minors during the time the previous statute was still running, the extension was permissible); *United States v. Pierre-Louis*, No. 16 Cr. 541 (CM), 2018 WL 4043140, at *1 (S.D.N.Y. Aug. 9, 2018) (same). Moreover, while the conduct alleged in the Indictment may have occurred years ago, the risk of a significant term of incarceration – and thus the motive to flee – is of course only very recent.

Each of these factors – the seriousness of the allegations, the strength of the evidence, and the possibility of lengthy incarceration – creates an extraordinary incentive to flee. And as further described below, the defendant has the means and money to do so.

B. The Characteristics of the Defendant

The history and characteristics of the defendant also strongly support detention. As an initial matter, the defendant's extensive international ties would make it exceptionally easy for her to flee and live abroad. The defendant was born in France and raised in the United Kingdom, where she attended school. Although she became a naturalized citizen of the United States in 2002, she also remains a citizen of the United Kingdom and France. Travel records from United States Customs and Border Protection ("CBP") reflect that she has engaged in frequent international travel, including at least fifteen international flights in the last three years to locations including the United Kingdom, Japan, and Qatar. In addition, CBP records reflect that, consistent with her citizenship status, the defendant appears to possess passports from the United States, France, and the United Kingdom.

[1] Prior to the amendment, the statute of limitations for sexual offenses involving minors ran until the victim reached the age of 25, and as such, all of the relevant charges in the Indictment remained timely as of the 2003 amendment described above.

In addition, the defendant appears to have access to significant financial resources that would enable her flight from prosecution. Based on the Government's investigation to date, the Government has identified more than 15 different bank accounts held by or associated with the defendant from 2016 to the present, and during that same period, the total balances of those accounts have ranged from a total of hundreds of thousands of dollars to more than $20 million. During the same period, the defendant engaged in transfers between her accounts of hundreds of thousands of dollars at a time, including at least several such significant transfers as recently as 2019. For example, the defendant transferred $500,000 from one of her accounts to another in March 2019, and transferred more than $300,000 from one of her accounts to another in July 2019. She has also reported, including as recently as 2019, that she holds one or more foreign bank accounts containing more than a million dollars.

The defendant also appears to have reaped substantial income from a 2016 property sale. In particular, in 2016, the defendant appears to have sold a New York City residence for $15 million through a limited liability company. On or about the date of the sale, amounts totaling more than $14 million were then deposited into an account for which the defendant was listed as the owner. Several days later, more than $14 million was transferred from that account into another account opened in the name of the defendant.[2] In short, the defendant's financial resources appear to be substantial, and her numerous accounts and substantial money movements render her total financial picture opaque and indeterminate, even upon a review of bank records available to the Government.

[2] The Government additionally notes that, somewhat further back in time, in transactions occurring between 2007 and 2011, approximately more than $20 million was transferred from accounts associated with Jeffrey Epstein to accounts associated with the defendant, including amounts in the millions of dollars that were then subsequently transferred back to accounts associated with Epstein.

The defendant's international connections and significant financial means would present a clear risk of flight under normal circumstances, but in this case, the risk of flight is exacerbated by the transient nature of defendant's current lifestyle. In particular, the defendant has effectively been in hiding for approximately a year, since an indictment against Epstein was unsealed in July 2019. Thereafter, the defendant – who had previously made many public appearances – stopped appearing in public entirely, instead hiding out in locations in New England. Moreover, it appears that she made intentional efforts to avoid detection, including moving locations at least twice, switching her primary phone number (which she registered under the name "G Max") and email address, and ordering packages for delivery with a different person listed on the shipping label. Most recently, the defendant appears to have been hiding on a 156-acre property acquired in an all-cash purchase in December 2019 (through a carefully anonymized LLC) in Bradford, New Hampshire, an area to which she has no other known connections.

The defendant appears to have no ties that would motivate her to remain in the United States. She has no children, does not reside with any immediate family members, and does not appear to have any employment that would require her to remain in the United States. Nor does she appear to have any permanent ties to any particular location in the United States. As such, the Government respectfully submits that the defendant will not be able to meet her burden of overcoming the presumption of detention, because there are no bail conditions that could reasonably assure the defendant's continued appearance in this case.

In particular, home confinement with electronic monitoring would be inadequate to mitigate the high risk that the defendant would flee, as she could easily remove a monitoring device. At best, home confinement with electronic monitoring would merely reduce her head start should she decide to flee. *See United States v. Zarger*, No. 00 Cr. 773, 2000 WL 1134364, at *1

(E.D.N.Y. Aug. 4, 2000) (Gleeson, J.) (rejecting defendant's application for bail in part because home detention with electronic monitoring "at best . . . limits a fleeing defendant's head start"); *United States v. Benatar*, No. 02 Cr. 099, 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002) (same); *see also United States v. Casteneda*, No. 18 Cr. 047, 2018 WL 888744, at *9 (N.D. Cal. Feb. 2018) (same); *United States v. Anderson*, 384 F. Supp. 2d 32, 41 (D.D.C. 2005) (same).

## CONCLUSION

As set forth above, the defendant is an extreme risk of flight. The Government respectfully submits that the defendant cannot meet her burden of overcoming the statutory presumption in favor of detention. There are no conditions of bail that would assure the defendant's presence in court proceedings in this case. Accordingly, any application for bail should be denied.

Dated: New York, New York
July 2, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: Alison G. Moe

Alison Moe
Alex Rossmiller
Maurene Comey
Assistant United States Attorneys
(212) 637-2225