UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                :

UNITED STATES OF AMERICA,       :

                          :          20 Cr. 330 (AJN)

         v.               :

GHISLAINE MAXWELL,         :

                  Defendant.    :

                                :

-------------------------------------------------------x

# MEMORANDUM OF GHISLAINE MAXWELL
## IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR DETENTION

Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600

Jeffrey S. Pagliuca
  (*pro hac vice* admission pending)
Laura A. Menninger
HADDON, MORGAN & FORMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364

*Attorneys for Ghislaine Maxwell*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 5

I.      The Conditions Created by the COVID-19 Pandemic Mandate the Release of
        Ms. Maxwell. ......................................................................................................... 5

II.     The Government Has Not Carried Its Burden Under 18 U.S.C. § 3142. ..................... 9

        A.      Applicable Law .......................................................................................... 9

        B.      Ms. Maxwell Has Rebutted the Presumption That She Poses a Flight
                Risk, and the Government Has Not Carried Its Burden That No
                Combination of Conditions Can Be Imposed To Reasonably Assure Her
                Presence In Court ....................................................................................... 11

                1.      Ms. Maxwell's Personal History and Characteristics
                        Demonstrate That She Is Not a Flight Risk ........................................ 12

                2.      The Nature and Circumstances of the Charges and the Weight of
                        the Evidence Militate in Favor of Bail ............................................. 17

                3.      The Proposed Bail Package Is More Than Adequate to Secure
                        Ms. Maxwell's Presence ................................................................. 20

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hung v. United States*,
    439 U.S. 1326 (1978)..................................................................................... 16

*United States v. Abdellatif El Mokadem*,
    No. 19-CR-646 (AJN), 2020 WL 3440515 (S.D.N.Y. June 23, 2020)..................................... 17

*United States v. Alindato-Perez*,
    627 F. Supp. 2d 58 (D.P.R. 2009) ................................................................... 18

*United States v. Bodmer*,
    No. 03-cr-947(SAS), 2004 WL 169790 (S.D.N.Y. Jan. 28. 2004)........................................... 16

*United States v. Boustani*,
    932 F.3d 79 (2d Cir. 2019)............................................................................... 20

*United States v. Carrillo-Villa*,
    20-MJ-3073 (SLC) ............................................................................................ 8

*United States v. Chandler*, 19-CR-867 (PAC),
    2020 WL 1528120 (S.D.N.Y. Mar. 31, 2020) ....................................................... 8, 9

*United States v. Conway*,
    No. 4–11–70756 MAG(DMR), 2011 WL 3421321 (N.D. Cal. Aug. 3, 2011) ................. 10, 18

*United States v. Crowell*,
    No. 06-CR-291E(F), 2006 WL 3541736 (W.D.N.Y. Dec. 7, 2006) ...................................... 11

*United States v. Deutsch*,
    No. 18-CR-502 (FB), 2020 WL 3577398 (E.D.N.Y. July 1, 2020) ................................. 11, 18

*United States v. DiGiacomo*,
    746 F. Supp. 1176 (D. Mass. 1990) .............................................................. 14

*United States v. Dominguez*,
    783 F.2d 702 (7th Cir. 1986) ........................................................................ 10

*United States v. Dreier*,
    596 F. Supp. 2d 831 (S.D.N.Y. 2009)............................................................. 21

*United States v. English*,
    629 F.3d 311 (2d Cir. 2011)...................................................................... 10, 11

*United States v. Epstein*,
    425 F. Supp. 3d 306 (S.D.N.Y. 2019) ........................................................................... 17

*United States v. Esposito*,
    309 F. Supp. 3d 24 (S.D.N.Y. 2018) ............................................................................. 21

*United States v. Friedman*,
    837 F.2d 48 (2d Cir. 1988) ..................................................................................... 13, 18

*United States v. Hansen*,
    108 F. App'x 331 (6th Cir. 2004) ................................................................................ 16

*United States v. Hanson*,
    613 F. Supp. 2d 85 (D.D.C. 2009) .............................................................................. 16

*United States v. Karni*,
    298 F. Supp. 2d 129 (D.D.C. 2004) ............................................................................ 16

*United States v. Kashoggi*,
    717 F. Supp. 1048 (S.D.N.Y. 1989) ........................................................................... 16

*United States v. Mattis*,
    No. 20-1713, 2020 WL 3536277 (2d Cir. June 30, 2020) ......................................... 10

*United States v. Moscaritolo*,
    No. 10 Cr. 4 (JL), 2010 WL 309679 (D.N.H. Jan. 26, 2010) .................................... 18

*United States v. Sabhnani*,
    493 F.3d 63 (2d Cir. 2007) ........................................................................ 9, 10, 16, 18

*United States v. Salerno*,
    481 U.S. 739 (1987) ...................................................................................................... 9

*United States v. Stephens*, 15-CR-95 (AJN),
    2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) ............................................... 5, 6, 7, 8

*United States v. Veres*,
    No. 3:20-CR-18-J-32JBT, 2020 WL 1042051 (M.D. Fla. Mar. 4, 2020) ................... 18

*United States v. Williams-Bethea*,
    No. 18-CR-78 (AJN), 2020 WL 2848098 (S.D.N.Y. June 2, 2020) ............................. 6

**Statutes**

18 U.S.C. § 3142 ...................................................................................................... passim

## PRELIMINARY STATEMENT

Ghislaine Maxwell respectfully submits this Memorandum in Opposition to the government's July 2, 2020 Memorandum in Support of Detention ("Gov. Mem.").

It is difficult to recall a recent case that has garnered more public attention than the government's prosecution of Jeffrey Epstein ("Epstein").  In July 2019, Epstein was indicted for offenses relating to sexual misconduct, amid overwhelming media attention focused on the nature of the charges and Epstein's wealth and lifestyle.  On August 10, 2019, Epstein died in federal custody, and the media focus quickly shifted to our client—wrongly trying to substitute her for Epstein—even though she'd had no contact with Epstein for more than a decade, had never been charged with a crime or been found liable in any civil litigation, and has always denied any allegations of claimed misconduct.  Many of these stories and online posts were threatening and harassing to our client and those close to her.

But sometimes the simplest point is the most critical one:  Ghislaine Maxwell is not Jeffrey Epstein.  She was not named in the government's indictment of Epstein in 2019, despite the fact that the government has been investigating this case for years.  Instead, the current indictment is based on allegations of conduct that allegedly occurred roughly twenty-five years ago.  Ms. Maxwell vigorously denies the charges, intends to fight them, and is entitled to the presumption of innocence.  Far from "hiding," she has lived in the United States since 1991, has litigated civil cases arising from her supposed ties to Epstein, and has not left the country even once since Epstein's arrest a year ago, even though she was aware of the pending, and highly publicized, criminal investigation.  She should be treated like any other defendant who comes before this Court, including as to bail.  Under the Bail Reform Act, case law in this Circuit and other circuits, as well as decisions of this Court, Ms. Maxwell should be released on bail, subject to the strict conditions proposed below.

*Background*.  Ms. Maxwell, 58, is a naturalized U.S. citizen who has resided in the United States since 1991.  She is also a citizen of France, where she was born, and of the United Kingdom, where she was educated and spent her childhood and formative years.  Ms. Maxwell graduated from Oxford University.  She moved to the United States in 1991, and has lived in this country ever since that time.  Ms. Maxwell has maintained extremely close relationships with her six siblings and her nephews and nieces.  They all stood by her in the aftermath of the July 2019 indictment of Epstein and continue to stand by her now.  She is especially close to two of her sisters and their children, all of whom reside in the United States.  Ms. Maxwell also has numerous friends in the United States who themselves have children, and she is a godmother to many of them.  Ms. Maxwell's family and friends have remained committed to her because they do not believe the allegations against her, which do not match the person they have known for decades.

*The Government's Position*.  The government has the burden of persuasion in showing that detention is warranted, and that there are no conditions or combination of conditions that will secure a defendant's appearance in court.  In seeking to carry this burden, the government relies on the presumption of detention in 18 U.S.C. § 3142(e)(3)(E), and argues that Ms. Maxwell poses a flight risk because she supposedly lacks ties to the United States; is a citizen of the United Kingdom and France, as well as a citizen of the United States, and has passports for each country; has traveled internationally in the past; and has financial means.  And echoing recent media stories, the government speculates that Ms. Maxwell was "hiding" from law enforcement during the pendency of the investigation, even though she has been in regular contact with the government, through counsel, since Epstein's arrest.  Finally, the government argues that the nature and circumstances of the offense and the weight of the evidence warrant

detention.  Importantly, in contrast with the bail position it took with Epstein, the government

does not and cannot assert that Ms. Maxwell presents a danger to the community under Section

3142(g)(4).

*Ms. Maxwell's Response*.  The Court should exercise its discretion to grant bail to Ms.

Maxwell, on the strict conditions proposed below (or as modified by the Court), for two

compelling reasons.

*First*, the COVID-19 crisis and its impact on detained defendants warrants release.  As

this Court has noted, the COVID-19 pandemic represents an unprecedented health risk to

incarcerated individuals, and COVID-19-related restrictions on attorney communications with

pretrial detainees significantly impair a defendant's ability to prepare her defense.  Simply put,

under these circumstances, if Ms. Maxwell continues to be detained, her health will be at serious

risk and she will not be able to receive a fair trial.  (*See infra* Section I, pages 5 to 9).

*Second*, the Court should grant bail because the government has not met its burden under

the Bail Reform Act and controlling case law.  The presumption relied on by the government

may be rebutted, and is so here.  Ms. Maxwell has strong ties to the community:  she is a U.S.

citizen and has lived in this country for almost 30 years; she ran a non-profit company based in

the United States until the recent media frenzy about this case forced her to wind it down to

protect her professional colleagues and their organizations; and she has very close ties with

family members and friends in New York and the rest of the country.  Nor does her conduct

indicate that she is a flight risk:  she has no prior criminal record; has spent years contesting civil

litigation arising from her supposed ties to Epstein; and has remained in the United States from

the time of Epstein's arrest until the present, with her counsel in regular contact with the

government.  She did not flee, but rather left the public eye, for the entirely understandable

purpose of protecting herself and those close to her from the crush of media and online attention and its very real harms—those close to her have suffered the loss of jobs, work opportunities, and reputational damage simply for knowing her. The government's remaining arguments— about Ms. Maxwell's passports, citizenship, travel and financial means— also fail because they would require that every defendant with multiple citizenship and financial means be denied bail, which is simply not the law. Finally, as discussed below, the government's position regarding the nature and circumstances of the offense and weight of its evidence, which relates to alleged conduct that is roughly twenty-five years old, is not persuasive and does not alter the bail analysis. (*See infra* Section II, pages 9 to 21).

*Proposed Bail Conditions*. In light of the above, we propose the following bail conditions, which are consistent with those that courts in this Circuit have imposed in analogous situations: (i) a $5 million personal recognizance bond, co-signed by six financially responsible people, all of whom have strong ties to Ms. Maxwell, and secured by real property in the United Kingdom worth over $3.75 million; (ii) travel restricted to the Southern and Eastern Districts of New York; (iii) surrender of all travel documents with no new applications; (iv) strict supervision by Pretrial Services; (v) home confinement at a residence in the Southern District of New York with electronic GPS monitoring; (vi) visitors limited to Ms. Maxwell's immediate family, close friends and counsel; (vii) travel limited to Court appearances and to counsel's office, except upon application to Pretrial Services and the government; and (viii) such other terms as the Court may deem appropriate under Section 3142.

The Bail Reform Act does not discard the presumption of innocence; Ms. Maxwell is entitled to that presumption here, as she is in all aspects of this case. *See* 18 U.S.C. § 3142(j) ("Nothing in this section [3142] shall be construed as modifying or limiting the presumption of

innocence."). The government has failed to meet its burden of establishing that Ms. Maxwell presents an "actual risk of flight" and must be detained under Section 3142. The strict bail conditions outlined above are appropriate under the circumstances and are the "least restrictive" set of conditions that will "reasonably assure" Ms. Maxwell's appearance in Court, without the health and access to counsel risks inherent in the government's request that Ms. Maxwell be detained pending trial. *See* 18 U.S.C. § 3142 (c)(1)(B). Under the controlling legal standards, Ms. Maxwell should be released on bail.

## **ARGUMENT**

There are two compelling reasons why the Court should order Ms. Maxwell's release on bail pursuant to the strict conditions she has proposed:

*First*, Ms. Maxwell will be at significant risk of contracting COVID-19 if she is detained, and she will not be able to meaningfully participate in the preparation of her defense due to the restrictions that have been placed on attorney visits and phone calls in light of the pandemic.

*Second*, the government has failed to carry its burden under 18 U.S.C. § 3142 that no combination of conditions can be imposed that will reasonably assure Ms. Maxwell's presence in court.

## I.    **The Conditions Created by the COVID-19 Pandemic Mandate the Release of Ms. Maxwell.**

*Impact of COVID-19 on the Prison Population*. We submit that the conditions created by the COVID-19 pandemic compel Ms. Maxwell's release pursuant to appropriate bail conditions. Four months ago, this Court held in *United States v. Stephens*, 15-CR-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020), that COVID-19 is an "unprecedented and extraordinarily dangerous" threat that justifies release on bail. *Id*. at *2. In that case, the defendant, who had no underlying medical conditions, filed an emergency motion for reconsideration of the Court's

prior detention order based in part on the risks brought on by COVID-19.  At the time, COVID-19 had only begun to take its devastating toll on New York, and there was no known outbreak in the prison population.  Nevertheless, the Court noted that "inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop," and, based in part on this changed circumstance, ordered the defendant released.  *Id.*

Since the Court issued its opinion in *Stephens*, the COVID-19 risks to inmates have increased dramatically, as there have been significant outbreaks of COVID-19 in correctional facilities.  In the last month alone, the number of prison inmates known to have COVID-19 has doubled to 68,000, and prison deaths tied to COVID-19 have increased by 73 percent.[1]  Indeed, as of July 2, 2020, nine of the ten largest known clusters of the coronavirus in the United States are in federal prisons and county jails.[2]  As this Court noted last month, "the 'inability [of] individuals to socially distance, shared communal spaces, and limited access to hygiene products' [in correctional facilities] make community spread all but unavoidable."  *United States v. Williams-Bethea*, No. 18-CR-78 (AJN), 2020 WL 2848098, at *5 (S.D.N.Y. June 2, 2020) (citation and internal quotation marks omitted).  The risks are further enhanced by the possibility of a second wave of coronavirus cases.[3]

In particular, COVID-19 has begun to spread through the Metropolitan Detention Center (MDC), where Ms. Maxwell has been housed since the Bureau of Prisons (BOP) transferred her there on July 6, 2020.  According to the MDC's statistics, as of April 3, 2020, two inmates and

---

[1] Timothy Williams, et al., *Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. Time*s*, available at https://www.nytimes.com/2020/06/16/us/coronavirus-inmates-prisons-jails.html (last updated June 30, 2020).

[2] *Coronavirus in the U.S: Latest Map and Case Count,* N.Y. Times, available at https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html#clusters (last updated July 2, 2020).

[3] *See, e.g.,* Audrey Cher, *WHO's Chief Scientist Says There's a "Very Real Risk" of a Second Wave of Coronavirus As Economies Reopen*, CNBC, June 9, 2020, available at https://www.cnbc.com/2020/06/10/who-says-theres-real-risk-of-second-coronavirus-wave-as-economies-reopen.html.

five staff had tested positive; by June 30, 2020, those numbers had risen to 14 and 41,

respectively.[4]  The increased spread among prisons means that the COVID-19 risks that were

present in the *Stephens* case four months ago are far more serious for Ms. Maxwell now and

mandate her release.

 *Impact of COVID-19 on the Ability to Prepare the Defense.*  The *Stephens* opinion

provides yet another independent basis that, we submit, requires Ms. Maxwell's release:  if she is

detained, her ability to meet with her attorneys and prepare for her defense will be significantly

impaired and she will not be able to meaningfully participate in the preparation of her defense.

 In *Stephens*, the Court found that this factor required the defendant's release under 18

U.S.C. § 3142(i), which provides for temporary release based on a determination that such

release is "necessary for preparation of the person's defense."  *Stephens,* 2020 WL 1295155 at

*3.  The Court noted that the spread of COVID-19 had compelled the BOP to suspend all in-

person visits, including legal visits, except as allowed on a case-by-case basis.  *Id.* at *3.  That

suspension persists to this day.[5]  In a case such as this, which will require assessing evidence

relating  to events that occurred approximately twenty-five years ago, including documents and

personal recollections, numerous in-person meetings between counsel and Ms. Maxwell will be

critical to the preparation of the defense.  The recent resurgence of the pandemic calls into

question whether these meetings will ever be able to happen in advance of her trial.  As in

---

[4] *See* April 3, 2020 Report from the BOP regarding the Metropolitan Detention Center and Metropolitan Correctional Center ("MDC and MCC Report"), available at https://img.nyed.uscourts.gov/files/reports/bop/20200403_BOP_Report.pdf; and June 30, 2020 MDC and MCC Report, available at https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200630_071147.pdf.

[5] *See* BOP COVID-19 Modified Operations Plan, available at https://www.bop.gov/coronavirus/covid19_status.jsp.

*Stephens*, Ms. Maxwell's inability to meet with her attorneys while this policy is in effect

constitutes a "compelling reason" requiring her release. *Stephens,* 2020 WL 1295155 at *3.[6]

Even speaking by phone with Ms. Maxwell presents daunting challenges due to COVID-

19-related protocols requiring at least 72 hours' notice to schedule a call, unless it is urgent, in

which case counsel can email a request to the MDC. As counsel learned this past week,

however, even an urgent call request does not mean the call will take place in the time required.

At approximately 5:30 p.m. on July 6, 2020, the Court ordered us to confer with Ms. Maxwell

about waiving her physical presence at the arraignment, initial appearance, and bail hearing, and

ordered counsel for both sides to jointly report back by 9:00 p.m. that night with a proposed date

and time for these proceedings. We promptly emailed the MDC to request an urgent call,

making specific reference to the Court's Order, but were not connected with Ms. Maxwell until

9:00 p.m. There will no doubt be other orders of the Court with no guarantees we will be able to

reach our client in time if she is detained.[7] In addition, during this past week, Ms. Maxwell has

not been able to physically review documents and has had limited access to writing materials.

The prohibition on in-person visits means we must read to her any documents requiring her

review, and she has virtually no ability to take notes. The age of the allegations in this case

compound these problems. Under the current circumstances, Ms. Maxwell cannot review

---

[6] Since the Court issued its opinion in *Stephens*, numerous other courts in this District have ordered defendants released on bail, over the government's objection, due to the pandemic and its impact on the defendant's ability to prepare for trial. *See, e.g.*, *United States v. Carrillo-Villa*, 20-MJ-3073 (SLC) (S.D.N.Y. Apr. 6, 2020) (releasing undocumented defendant in drug conspiracy case because of inability to meaningfully communicate with lawyer and risk of COVID-19); *United States v. Hudson*, 19-CR-496 (CM) (S.D.N.Y. Mar. 19, 2020) (releasing defendant in drug conspiracy, loansharking, and extortion case, whose two prior, pre-COVID-19 bail applications were denied, because of inability to prepare for upcoming trial and risk of COVID-19); *United States v. Chandler*, 19-CR-867 (PAC), 2020 WL 1528120, at *1 (S.D.N.Y. Mar. 31, 2020) (releasing defendant on felon in possession case, with prior manslaughter conviction, due to inability to prepare for trial due to COVID-19 restrictions).

[7] The government has recently worked with the BOP to set up a standing call between counsel and Ms. Maxwell each morning until the initial appearance to facilitate attorney-client communications. While we greatly appreciate these efforts, they are a short-term patch to a persistent problem that shows no signs of abating. Nor would it be appropriate, on an ongoing basis, for the prosecutors to be involved in and dictate the date and time of our communications with our client in connection with the preparation of our defense.

documents and other evidence from approximately twenty-five years ago and meaningfully assist in the preparation of her defense.  These restrictions are additional "compelling reasons" justifying her release.  *See id.*[8]

## II.    The Government Has Not Carried Its Burden Under 18 U.S.C. § 3142.

The grave concerns raised by the current COVID-19 crisis notwithstanding, Ms. Maxwell must be released because she has met her limited burden of production showing that she does not pose a flight risk, and the government has entirely failed to demonstrate that no release condition or combination of conditions exist that will reasonably assure Ms. Maxwell's presence in court.

### A.    Applicable Law

As the Supreme Court has recognized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno,* 481 U.S. 739, 755 (1987).  Pretrial detention is appropriate only where "no condition or combination of conditions will reasonably assure the appearance of the [defendant]."  *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting 18 U.S.C. § 3142(e)).  The Bail Reform Act provides that a court *"shall* order the pretrial release" of the defendant (18 U.S.C. § 3142(b)) (emphasis added), but may impose bail conditions if "such release will not reasonably assure the appearance" of the defendant in court.  18 U.S.C. § 3142(c).  Where conditions are necessary, such release shall be "subject to the *least restrictive* . . . set of conditions that [the court] determines will reasonably assure the appearance of the person as required."  18 U.S.C. § 3142(c)(1)(B) (emphasis added).  Consequently, "[u]nder this statutory scheme, 'it is only a limited group of offenders who should be denied bail pending trial.'"  *Sabhnani*, 493 F.3d at 75 (citation and internal quotation marks omitted).

---

[8] *See also* Letter of Sean Hecker to Hon. Margo K. Brodie (July 8, 2020), *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.,* No. 19 Civ. 660 (E.D.N.Y.) (Doc. No. 78) (detailing absence of in-person visitation, highly limited VTC and telephone call capacity, and issues pertaining to legal mail and legal documents).

The government bears a dual burden in seeking pre-trial detention. First, the government must show "by a preponderance of the evidence that the defendant . . . presents an *actual* risk of flight." *Sabhnani*, 493 F.3d at 75 (emphasis added). If the government is able to satisfy this burden, it must then "demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Id.*

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant, the court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

In this case, unlike in the Epstein case, the government does not contend that Ms. Maxwell poses any danger to the community, and therefore the fourth factor does not apply.

The Bail Reform Act contains a rebuttable presumption, applicable based on certain of the crimes charged here, that no conditions will reasonably assure against flight. *See* 18 U.S.C. § 3142(e)(3)(E). In cases where this presumption applies, the "defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that [she] does not pose . . . a risk of flight." *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quotation omitted). This rebuttable presumption can be readily satisfied, *United States v. Conway*, No. 4–11–70756 MAG (DMR), 2011 WL 3421321, at *2 (N.D. Cal. Aug. 3, 2011), and "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation" of the presumption. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *see also United States v. Mattis*, No. 20-1713,

2020 WL 3536277, at \*4–5 (2d Cir. June 30, 2020).  Although the presumption "remains a factor to be considered" even after the defendant has met her burden of production, "[a]t all times . . . the government retains the ultimate burden of persuasion by . . . a preponderance of the evidence" that the defendant poses a flight risk that cannot be addressed by any bail conditions. *English*, 629 F.3d at 319 (citation and internal quotation marks omitted); *see also United States v. Deutsch*, No. 18-CR-502 (FB), 2020 WL 3577398, at \*5 (E.D.N.Y. July 1, 2020).  And regardless of the presence of the presumption or the nature of the charges alleged, "[n]othing in this section [3142] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j); *see also United States v. Crowell*, No. 06-CR-291E(F), 2006 WL 3541736, at \*3 (W.D.N.Y. Dec. 7, 2006) (those charged with crimes involving minors "continue to enjoy the presumption of innocence in setting conditions of release.").

### B.    Ms. Maxwell Has Rebutted the Presumption That She Poses a Flight Risk, and the Government Has Not Carried Its Burden That No Combination of Conditions Can Be Imposed To Reasonably Assure Her Presence In Court

The government has not carried its burden of establishing that no set of conditions will reasonably assure Ms. Maxwell's appearance in court.  As set forth below, Ms. Maxwell's personal history, her family and other ties to this country, and her conduct prior to her arrest easily rebut the presumption that she presents a risk of flight.  For these same reasons, the government cannot establish that the strict bail conditions she proposes, which are consistent with a number of cases in this Circuit in which courts have ordered release, will not "reasonably assure" her presence in court.  Accordingly, the Court should order Ms. Maxwell released pursuant to her proposed conditions.

1.     **Ms. Maxwell's Personal History and Characteristics Demonstrate That She Is Not a Flight Risk**

a.     *Ms. Maxwell Has No Prior Criminal Record, and Has Significant Ties to the United States and the New York Region*

Ms. Maxwell's history and characteristics do not "strongly support detention," as the government contends (Gov. Mem. at 6), but instead demonstrate that she is firmly rooted in this country and that her appearance can be reasonably assured with appropriate bail conditions. Ms. Maxwell has no criminal record, which includes the approximately twenty-five-year period from the time the conduct alleged in the indictment took place to the present. Ms. Maxwell also has significant ties to the United States. She has lived in this country for almost 30 years and became a naturalized U.S. citizen in 2002. Ms. Maxwell also has strong family ties to this country. Two of her sisters, who have agreed to co-sign her bond, live in the United States, and they have several children who are U.S.-born citizens. Ms. Maxwell is very close with her sisters and maintains regular contact with them, as well as with her nieces and nephews. Ms. Maxwell also has numerous close friends and professional colleagues who reside in this country. In sum, the United States has been Ms. Maxwell's home for decades.

b.     *Ms. Maxwell Has Actively Litigated Civil Cases in this District and Has Not Left the United States Since Epstein's 2019 Arrest*

Ms. Maxwell has never once attempted to "hide" from the government or her accusers, and has never shown any intent to leave the country. To the contrary, Ms. Maxwell has always vehemently denied that she was involved in illegal or improper conduct related to Epstein, and her conduct has been entirely consistent with someone who fully intends to remain in this country and fight any allegations brought against her. For example, since 2015, and continuing through today, Ms. Maxwell has actively litigated several civil

cases related to Epstein in the Southern District of New York and has sat for depositions in those cases. Similarly, throughout the course of the criminal investigation of this case, which has been publicly reported on for nearly a year, Ms. Maxwell has remained in the United States. Indeed, on July 7, 2019, the day after Epstein's arrest, Ms. Maxwell reached out to the prosecutors in the Southern District of New York, through counsel, and maintained regular contact with them right up to the point of her arrest.

The government's broad assertion that Ms. Maxwell has engaged in "frequent international travel" in the last three years (Gov. Mem. at 6) obscures the critical point: *she has not left the country even once since Epstein's arrest*. Ms. Maxwell's decision to remain in the United States after Epstein's arrest and subsequent death in August 2019 is particularly significant because any incentive she may have had to flee would have been even more acute at that time. Within days of Epstein's death, a steady stream of press articles began turning the public's attention to Ms. Maxwell—wrongly substituting her for Epstein—and speculating that she had become the prime target of the government's investigation.[9] Adding even more fuel to this fire, several of the women claiming to be victims of Epstein's abuse began publicly calling for her immediate arrest and prosecution. Despite the increasing risk of being criminally charged, and the media firestorm that was redirected toward her after Epstein's death, and despite having ample opportunity to leave the country, Ms. Maxwell stayed in the United States for almost an entire year until she was arrested. These actions weigh heavily in favor of release. *See United States v. Friedman*,

---

[9] *See, e.g.*, *Spotlight turns on Jeffrey Epstein's British socialite 'fixer' Ghislaine Maxwell after his suicide – but will she be prosecuted?*, Daily Mail (Aug. 10, 2019), https://www.dailymail.co.uk/news/article-7344765/Spotlight-turns-Jeffrey-Epsteins-fixer-Ghislaine-Maxwell-suicide.html; *Ghislaine Maxwell: the woman accused of helping Jeffrey Epstein groom girls*, The Guardian (Aug. 12, 2019), https://www.theguardian.com/us-news/2019/aug/12/ghislaine-maxwell-woman-accused-jeffrey-epstein-groom-girls; *British socialite Ghislaine Maxwell in spotlight after Epstein's apparent suicide*, NBC News (Aug. 12, 2019), https://www.nbcnews.com/news/us-news/british-socialite-ghislaine-maxwell-spotlight-after-epstein-s-apparent-suicide-n1041111.

837 F.2d 48, 49-50 (2d Cir. 1988) (overturning district court's decision that defendant posed

a flight risk based in part on the ground that the defendant took "no steps" to flee

jurisdiction in three-week period between execution of search warrant at home and arrest);

*United States v. DiGiacomo*, 746 F. Supp. 1176, 1179-80 (D. Mass. 1990) (concluding

defendants did not present a flight risk because each of them "for three years knew there

was substantial evidence of the likely charges against them and did not attempt to flee

before indictment").

Indeed, the absence of any allegation by the government that Ms. Maxwell was

taking steps to leave the country at the time of her arrest is conspicuous.  The government

has offered no proof that she was making plans to leave the country.  In fact, had the

government alerted her counsel that she was about to be arrested, we would have arranged

for Ms. Maxwell's prompt, voluntary surrender.  Instead, the government arrested Ms.

Maxwell without warning on the day before the July 4th holiday, thus ensuring that she

would be in federal custody on the one-year anniversary of Epstein's arrest.

   c. *Ms. Maxwell's Actions to Protect Herself From Intrusive Media Coverage and Death Threats Do Not Demonstrate an Intent to Flee*

Furthermore, the steps Ms. Maxwell took to leave the public eye after Epstein's

arrest are not indicative of a risk of flight.  The government notes that Ms. Maxwell dropped

out of public view after Epstein's arrest, which the government seeks to portray as "hiding"

from the law.  The government further argues that she has taken several steps to avoid

detection, including moving residences and switching her phone and email address.  (Gov.

Mem. at 8).  But Ms. Maxwell did not take these steps to hide from law enforcement or

evade prosecution.  Instead, they were necessary measures that Ms. Maxwell was forced to

take to protect herself, her family members, her friends and colleagues, and their children, from unrelenting and intrusive media coverage, threats, and irreparable reputational harm.

Ever since Epstein's arrest, Ms. Maxwell has been at the center of a crushing onslaught of press articles, television specials, and social media posts painting her in the most damning light possible and prejudging her guilt. The sheer volume of media reporting mentioning Ms. Maxwell is staggering. Since Epstein's arrest, she has been mentioned in literally thousands of media publications, news reports, and other online content. The media attention also spawned a carnival-like atmosphere of speculation about her whereabouts. In November 2019, the British tabloid, *The Sun*, even offered a £10,000 bounty for information about Ms. Maxwell's location. A headline reminiscent of a Wild West wanted poster read: "WANTED: The Sun is offering a £10,000 reward for information on Jeffrey Epstein pal Ghislaine Maxwell."[10] And in the days leading up to her arrest, there was a deluge of media reports (all untrue) claiming that Ms. Maxwell was hiding out in an apartment in Paris to avoid questioning by the FBI.[11] She has seen helicopters flying over her home and reporters hiding in the bushes. Indeed, since Ms. Maxwell's arrest on July 2, 2020, her counsel has been flooded with hundreds of media inquiries and solicitations from members of the public.

The "open season" declared on Ms. Maxwell after Epstein's death has come with an even darker cost – she has been the target of alarming physical threats, even death threats, and has had to hire security guards to ensure her safety. The media feeding frenzy, which has only intensified in recent months, has also deeply affected her family and friends. Some of Ms. Maxwell's closest friends who had nothing whatsoever to do with Epstein have lost their jobs or

---

[10] *See* https://www.the-sun.com/news/74018/the-sun-is-offering-a-10000-reward-for-information-on-jeffrey-epstein-pal-ghislaine-maxwell/.

[11] *See, e.g.,* https://www.dailymail.co.uk/news/ article-8444137/Jeffrey-Epsteins-fugitive-madam-Ghislaine-Maxwell-hiding-luxury-Paris.html.

suffered severe professional and reputational damage simply by being associated with her.  Ms.
Maxwell therefore did what any responsible person would do – she separated herself from
everyone she cares about and removed herself from the public eye in order to keep herself and
her friends out of harm's way.[12]

 Lacking any evidence required under the governing standard that Ms. Maxwell
presents an "actual risk of flight," *Sabhnani*, 493 F.3d at 75, the government's flight risk
argument is reduced to the following:  Ms. Maxwell is a woman of means who has foreign
citizenship and has traveled internationally in the past, and who now faces serious charges.
But if that were sufficient, then virtually every defendant with a foreign passport and any
meaningful amount of funds would need to be detained as a flight risk.  *See Hung v. United
States* 439 U.S. 1326, 1329 (1978) (to detain based on risk of flight, government must show
more than "opportunities for flight," and instead must establish an "inclination on the part of
[the defendant] to flee").  That is not what the Bail Reform Act requires.  Indeed, courts in
this Circuit and elsewhere commonly find that bail conditions can adequately address risk of
flight, even where individuals have foreign citizenship and passports or otherwise substantial
foreign connections, and financial means.  *See, e.g.*, *Sabhnani*, 493 F.3d at 66; *United States v.
Hansen*, 108 F. App'x 331 (6th Cir. 2004); *United States v. Hanson*, 613 F. Supp. 2d 85 (D.D.C.
2009); *United States v. Bodmer*, No. 03-cr-947(SAS), 2004 WL 169790, at *2-3 (S.D.N.Y.
Jan. 28. 2004); *United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2004); *United States v.
Kashoggi*, 717 F. Supp. 1048, 1050-52 (S.D.N.Y. 1989).

 Finally, the ongoing travel restrictions caused by the COVID-19 pandemic would
pose a significant hurdle to Ms. Maxwell's ability to flee the United States, particularly to

---

[12] The media spotlight has also drawn out people who claim to speak for Ms. Maxwell, and even purport to have had
direct communications with her, but who, in fact, have no ties to Ms. Maxwell whatsoever.  One such person has
even given numerous television interviews on news shows in the United Kingdom.

France and the United Kingdom.[13]  Notably, two weeks ago, this Court recognized in *United States v. Abdellatif El Mokadem*, No. 19-CR-646 (AJN), 2020 WL 3440515 (S.D.N.Y. June 23, 2020) that "concerns regarding risk of flight are mitigated by the ongoing [COVID-19] pandemic, which has understandably curtailed travel across the country, and, indeed, around the world."  *Id.* at *1.  In that case, despite finding detention to be warranted on two prior occasions, the Court concluded that the government could no longer establish flight risk and ordered the defendant released pending sentencing.  *Id.* ("Taking account of the COVID-19 pandemic, which had not yet reached this country when the Court last considered Defendant's custody status, the balance now clearly and convincingly tips in Defendant's favor . . . .").  Consideration of this factor weighs heavily in favor of release on the proposed bail conditions here.

### 2.    The Nature and Circumstances of the Charges and the Weight of the Evidence Militate in Favor of Bail

*The Defense Has Rebutted the Presumption Relating to Certain of the Charges*.  The government relies on the statutory presumption of detention applicable to offenses involving minor victims.  (Gov. Mem. at 4-5.)  But unlike the position it took with Epstein, the government does not contend that Ms. Maxwell poses any danger to the community, or that she suffers from compulsive or addictive sexual proclivities.  *See United States v. Epstein*, 425 F. Supp. 3d 306, 314-15 (S.D.N.Y. 2019).  Even according to the indictment, Ms. Maxwell's alleged participation in offenses involving minors ended in 1997.  Here, the only

---

[13] *See, e.g.*, *E.U. Formalizes Reopening, Barring Travelers From U.S.*, N.Y. Times, (June 30, 2020), *available at* https://www.nytimes.com/2020/06/30/world/europe/eu-reopening-blocks-us-travelers.html (confirming that the European Union will not open its borders to travelers from the United States, and "[t]ravelers' country of residence, not their nationality, will be the determining factor for their ability to travel to countries in the European Union"); *England Drops Its Quarantine for Most Visitors, but Not Those From the U.S.*, N.Y. Times (July 3, 2020), *available at* https://www.nytimes.com/2020/07/03/world/europe/britain-quarantine-us-coronavirus.html (confirming that England will leave mandatory 14-day quarantine restrictions in place for travelers coming from the United States).

applicable presumption relates to risk of flight, and, as noted, Ms. Maxwell has rebutted that presumption based on her ties to the United States, her decision to remain in this country after Epstein's arrest, and all of the other reasons discussed above. This Court should follow other courts in this Circuit and elsewhere that have found that defendants rebutted the presumption and imposed appropriately strict bail conditions in cases involving alleged offenses against minors. *See Deutsch*, 2020 WL 3577398, at *5-6; *United States v. Veres*, No. 3:20-CR-18-J-32JBT, 2020 WL 1042051, at *3-4 (M.D. Fla. Mar. 4, 2020); *Conway*, 2011 WL 3421321, at *4-5.

*The Impact of the Potential Penalties Is Overstated*. The government asserts that detention is warranted because of the potential for a long sentence in this case. (Gov. Mem. at 4-5.) This oversimplifies the governing standard. Although the severity of potential punishment is a relevant consideration, the Second Circuit "require[s] more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." *Friedman*, 837 F.2d at 49-50 (district court's finding that defendant posed a risk of flight was clearly erroneous, despite potential for "long sentence of incarceration"); *see also Sabhnani*, 493 F.3d at 65, 76-77 (reversing detention order where defendants agreed to significant physical and financial restrictions, despite the fact that they faced a "lengthy term of incarceration"). Accordingly, the asserted potential for a long sentence does not meet the government's burden of persuasion.[14]

---

[14] The government relies on *United States v. Alindato-Perez*, 627 F. Supp. 2d 58, 66 (D.P.R. 2009), cited approvingly by *United States v. Moscaritolo*, No. 10 Cr. 4 (JL), 2010 WL 309679, at *2 (D.N.H. Jan. 26, 2010) for the proposition that "[t]he steeper the potential sentence, the more probable the flight risk is, especially considering the strong case of the government . . . ." (Gov. Mem. at 5.) But *Alindato-Perez* is easily distinguished on its facts from Ms. Maxwell's case. *Alindato-Perez* was a narcotics case that did not involve 20-year old conduct as here, but instead involved a conspiracy that "continu[ed] until the date of the indictment." 627 F. Supp. 2d at 60-61. The evidence included eleven "clearly incriminating video tapes" and testimony from various cooperating witnesses, and the defendant faced a 10-year mandatory minimum sentence. *Id*. at 61-64. These factors are not present in this case.

Moreover, the government overstates the potential for Ms. Maxwell to spend "decades in prison" if she is convicted.  (Gov. Mem. at 5.)  In fact, her likely total exposure even if she were convicted on all counts is 10 years, assuming the Court were to follow the traditional practice in this District and impose concurrent sentences.  Although a 10-year sentence would be significant, it is a far cry from the government's forecast, further demonstrating that the government has not met its burden of showing Ms. Maxwell is an actual risk of flight.

*The Government's Case Is Subject to Significant Challenges.*  In evaluating the strength of the government's case, we note that Ms. Maxwell intends to mount several legal challenges to the indictment, including that: (i) this prosecution is barred by Epstein's September 24, 2007 non-prosecution agreement with the Department of Justice, which covers "any potential co-conspirators of Epstein"; (ii) the conspiracy, enticement of minors, and transporting of minors charges are time-barred and otherwise legally flawed; and (iii) the two perjury charges are subject to dismissal on several legal grounds.[15]  In addition, as we understand from the face of the indictment, the government's case is based primarily on the testimony of three individuals about events that allegedly occurred roughly 25 years ago between 1994 and 1997.  It is inherently more difficult to prosecute cases relating to decades-old conduct.  These issues further call into question the strength of the government's case, and provide an independent basis justifying release on bail.

---

[15] The defense is also considering whether the government's comments in connection with this case conform to Local Criminal Rule 23.1, and whether to seek appropriate relief from the Court.

### 3.    The Proposed Bail Package Is More Than
Adequate to Secure Ms. Maxwell's Presence

For the reasons stated above, the Court should release Ms. Maxwell because the

circumstances created by the COVID-19 pandemic will greatly increase her personal risk

and prevent her from meaningfully participating in her defense, and because the government

has not carried its burden under 18 U.S.C. § 3142.  We respectfully submit that the proposed

bail package represents the "least restrictive" set of conditions that will reasonably ensure Ms.

Maxwell's presence in court.  18 U.S.C. § 3142 (c)(1)(B).

The package includes six co-signers—Ms. Maxwell's siblings, relatives and

friends—many of whom reside in the United States, and all of whom continue to support her

despite the unrelenting media attacks that Ms. Maxwell and they, themselves, have suffered

as a result of this case.  Each of them has voluntarily agreed to assume responsibility for an

extremely large bond amount of $5 million, in order to secure her appearance.  The bond is

also to be secured by real property in the United Kingdom worth roughly $3.75 million.

The package also includes stringent travel and physical restrictions, including surrendering

all passports and no new travel applications, travel restricted to the Southern and Eastern

Districts of New York, and home detention with electronic GPS monitoring.  Ms. Maxwell,

for personal reasons, will continue to need security guards to protect her upon release.

Under the circumstances, if the Court requires it, the security guards could report to Pretrial

Services.[16]

---

[16] In *United States v. Boustani*, 932 F.3d 79 (2d Cir. 2019), the Second Circuit curtailed the circumstances under which a court can grant pretrial release to a defendant on the condition that the defendant pays for private armed security guards.  *Boustani*, nevertheless, held that a defendant may be released on such a condition if the defendant "is deemed to be a flight risk primarily *because of* his wealth.  In other words, a defendant may be released on such a condition only where, *but for* his wealth, he would not have been detained." *Id.* (emphasis in original).  We submit that a similarly situated defendant who, like Ms. Maxwell, had no prior criminal record, significant ties to the United States, and a demonstrated lack of intent to flee the country, as well as numerous, supportive co-signers, but who did

Ms. Maxwell has a number of other family members and friends who, under normal circumstances, would also co-sign and secure her bond. She is not relying on them in connection with this bail application in an effort to safeguard their privacy and protect them and their families from harm.

The proposed bail conditions are consistent with those approved by courts in this Circuit in other high-profile cases, and should be approved here. *See, e.g.*, *United States v. Esposito*, 309 F. Supp. 3d 24, 32 (S.D.N.Y. 2018) (alleged leader of Genovese crime family who was charged with racketeering and extortion granted release subject to conditions), *aff'd*, 749 F. App'x 20 (2d Cir. 2018); *United States v. Dreier*, 596 F. Supp. 2d 831, 832 (S.D.N.Y. 2009) (Marc Dreier, accused of "colossal criminality" and alleged to be a "high flight risk," granted release subject to conditions); *United States v. Madoff*, 586 F. Supp. 2d 240, 243 (S.D.N.Y. 2009) (Bernie Madoff, charged with "largest Ponzi scheme ever" and alleged to be a "serious risk of flight," granted release subject to conditions).

---

not have Ms. Maxwell's means, would be released on bail conditions. Accordingly, if the Court deems it necessary, it may impose private security guards as a condition of release.

## **CONCLUSION**

For the foregoing reasons, Ms. Maxwell respectfully requests that the Court order her release on bail pursuant to the conditions she has proposed.

Dated:  July 10, 2020

Respectfully submitted,


*/s/ Mark S. Cohen*

Mark S. Cohen
Christian R. Everdell
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: 212-957-7600


Jeffrey S. Pagliuca
  (*pro hac vice* admission pending)
Laura A. Menninger
HADDON, MORGAN & FORMAN P.C.
150 East 10th Avenue
Denver, Colorado 80203
Phone: 303-831-7364


*Attorneys for Ghislaine Maxwell*